UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLA HUNT,

                Plaintiff,                    Case No. 2:14-cv-13774
                                        District Judge Robert H. Cleland
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Darla Hunt, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 10), the Commissioner's

memorandum in opposition and cross motion for summary judgment (DE 13), and the administrative record (DE 7).

When this action began, Plaintiff's was represented by attorney, Richard J. Doud of the law firm of Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Davidson firm").  During the pendency of this action, this case was temporarily transferred to a three-judge panel for consideration of the Commissioner's request for a global 60 day stay and the question of substitution of counsel in all pending cases of attorney Richard J. Doud.  (*See* Text-Only Order dated 5/20/15 and Administrative Order 15-AO-033.)  On June 9, 2015, the case was stayed.  (DE 15.)  On October 19, 2015, the panel concluded its work and transferred the case back to the judge to whom the matter was originally assigned, indicating that it was the responsibility of the originally assigned judge to determine when to lift the stay in the case.  (*See* Text-Only Order dated 10/19/2015 and Administrative Order 15-AO-045.)  This Court lifted the stay in this matter on January 8, 2016.  (DE 17.)

As a result of the panel's work, the Davidson firm was directed to send Plaintiff a letter indicating that no lawyers at that firm are permitted to represent her in this case.  The letter was also to provide her with the names of other lawyers who handle Social Security disability cases, as well as the State Bar of Michigan's attorney referral telephone number.  Plaintiff was given 60 days from October 19, 2015 to retain a new lawyer or proceed without the assistance of counsel.  To date,

there is no indication that Plaintiff has retained alternate counsel.  On January 8, 2016, the Court issued a notice to inform Plaintiff that she could file a new motion for summary judgment or supplement the existing motion by informing the Court of her intention to do so on or before January 15, 2016.  The Court did not receive any notice from Plaintiff and will therefore proceed on the current briefing.

### A.    Background

Plaintiff protectively filed her applications for benefits on April 3, 2012, alleging that she has been disabled since April 23, 2008.  (R. at 17.)  Plaintiff's application was denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Regina Sobrino held a hearing on April 8, 2013 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 17-49.)   On July 29, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Sobrino's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.    Plaintiff's Medical History

 Plaintiff was in a car accident on April 23, 2008.  She presented to the Genesys Regional Medical Center with complaints of right thigh and shoulder pain.  (R. at 200.)  She was diagnosed with a right midshaft femur fracture and a middle one-third clavicle fracture, and admitted to the hospital under the direction

3

of Jason Sadowski, M.D.  (R. at 201.)  Dr. Sadowski, an orthopedic surgeon, performed an open reduction internal fixation on her clavicle and an intermedullary rodding of the right femoral shaft.  (R. at 209-212.)  Plaintiff was discharged to inpatient rehabilitation on April 30, 2008, and was discharged from inpatient rehabilitation on May 13, 2008, with instructions to follow up in a week.  (R. at 218-220.)

Plaintiff began seeing Dr. Sadowski, following her surgeries, on July 17, 2008.  He recommended that she continue with aggressive physical therapy (R. at 333.)  Plaintiff followed up with her primary care physician, John Stoker, D.O., on July 25, 2008.  (R. at 241-44.)  Dr. Stoker recommended that Plaintiff rest the affected area for twelve weeks and continue physical therapy.  (R. at 243-44.)

She presented to occupational therapy with Steven Schultz, M.D., on June 10, 2008.  (R. at 249-250).  Dr. Schultz recommended that Plaintiff continue with physical therapy and remain off work until August of 2008.  On September 4, 2008, Dr. Schultz noted that Plaintiff reported continued improvement, including the ability to ambulate short distances without the use of her cane.  (R. at 241.)  He indicated that Plaintiff was recovering well from her injuries and recommended advancing physical therapy.  On October 2, 2008, Plaintiff reported continuing progress, but noticed increasing pain in her right knee and hypersensitivity in her left shoulder.  (R. at 252.)  On October 29, 2008, however, Plaintiff reported

4

continued improvement with less knee pain due to wearing a patellar stabilization brace. She also reported improved range of motion in her shoulder. (R. at 253.) On November 26, 2008, Dr. Schultz reported that Plaintiff was "doing quite well," with full range of motion in her knee and left shoulder, and that she could be discharged from therapy. (R. at 255.) Dr. Schultz also noted, "I feel that she will be able to return to her previous job as a nursing assistant unrestricted," but indicated that he also supported her changing to a more sedentary career. (Id.) On December 4, 2008, Dr. Sadowski cleared Plaintiff for work with respect to her clavicle and femur injury, but noted that she may need to remain off work for her back pain, and deferred to her physiatrist as to when she could return to work.[1] (R. at 332.)      On December 11, 2008, Plaintiff underwent an x-ray of her lumbar spine, which revealed rotoscoloiosis. (R. at 257.) She underwent an MRI of the lumbar spine on December 20, 2008, which "except for minimal degenerative changes," was unremarkable. (R. at 258.) On December 30, 2008, Plaintiff followed up with Dr. Schultz, who noted that she was continuing to improve and making excellent progress. (R. at 259.)

On August 27, 2009, an x-ray of Plaintiff's left knee revealed mild degenerative arthritis. (R. at 264.) A February 4, 2011 MRI of Plaintiff's lumbar

---

[1] As noted above, however, her physiatrist cleared her to return to work on November 26, 2008.

5

spine was normal.  (R. at 313.)  An October 25, 2011 x-ray of her lumbar spine

showed no significant abnormality.  (R. at 274.)

On June 9, 2011, Plaintiff presented for follow-up with Dr. Sadowski.

Plaintiff reported no knee symptoms, but mild sensitivity in the buttock region and

indicated that she was ready to stop therapy and transition to a gym membership.

(R. at 316.)  Dr. Sadowski recommended that she get a gym membership to stay

active and fit and "continue to live with her mild implant sensitivity symptoms."

(R. at 317.)  On May 7, 2012, Dr. Stoker recommended that Plaintiff increase her

exercise daily.  (R. at 342.)  On May 10, 2012, Dr. Sadowski noted that Plaintiff

had difficulty walking long distances but did not do additional physical therapy or

join a gym.  (R. at 314.)  He noted that regular exercise and a gym membership

would be reasonable.  (R. at 315.)  On July 26, 2012, Dr. Stoker found that

Plaintiff had no difficulty walking or standing.  (R. at 345.)

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

At the April 8, 2013 hearing, Plaintiff testified that she lived with her

husband and had attained a Bachelor's degree in Business Administration.  (R. at

34.)  Plaintiff indicated that she stopped working in 2008 because of a car accident.

(R. at 35.)  As a result of the accident and subsequent surgeries, Plaintiff explained

that she had trouble reaching over her head with her left arm, although she is right-

hand dominant.  (R. at 36.)  She further noted that she had trouble bending at the waist due to back and hip pain.  (Id.)

Plaintiff testified that she had trouble bending and crouching because of the pain in her leg following the car accident.  (R. at 36.)  She noted that she had had constant pain in her right leg that started at the hip joint.  (R. at 40.)  She indicated that the pain was a seven out of ten with medication, and a ten out of ten without medication.  (R. at 41.)  She further noted that the pain sometimes "flared," and she dealt with that by lying on a heating pad.  (R. at 41.)  Plaintiff indicated that she had trouble sleeping because of the pain.  (R. at 43.)

According to Plaintiff, she could stand for ten minutes, walk for ten minutes, and sit for ten or fifteen minutes at a time.  (R. at 35.)  She was not using a cane. (Id.)  Plaintiff also noted that she could lift between eight and ten pounds and had no trouble using her hands.  (Id..)  She could "go up and down" stairs, but guessed that she was "a little slower than usual."  (R. at 36.)  She further testified that the side effect of her pain medications "is just drowsiness."  (R. at 37.)  She noted that she tried physical therapy for her pain, but indicated that it did not help.  (R. at 38.)

In addition to her physical symptoms, Plaintiff testified to having depression.  (R. at 41.)  She noted that her symptoms included crying and staying to herself.  (R. at 41.)  Plaintiff further testified that she was not comfortable in big crowds and had some memory problems.  (R. at 42.)  She indicated that she had

suicidal thoughts twice a month, but that she had not talked to her therapist about them.  (R. at 42-43.)  She explained that her symptoms were not constant and that she would have three or four bad days per week.  (R. at 42.)  She stated she had not gone to the emergency room or been hospitalized overnight since 2008.  (R. at 39.)

Plaintiff testified that she cooked, cleaned, did laundry and other chores, and "can go to the store and get those couple of items," although her husband took care of the weekly "big grocery shopping."  (R. at 36.)  She indicated that she could bathe and dress herself, but that she was "just a little slower."  (R. at 37.)  Plaintiff clarified, however, that she could only do these activities for twenty or thirty minutes before taking a break.  (R. at 41.)  Plaintiff testified that she drove within the city, but had not made a trip of over 75 miles since 2008.  (R. at 37.)

### 2.    Vocational Expert Testimony

Polly McCathen testified as the Vocational Expert ("VE") at the administrative hearing.  (R. at 45-49.)  The VE identified Plaintiff's past relevant work as "direct care worker," a semi-skilled position at the heavy exertional level.  (R. at 46.)  The ALJ then presented a series of hypotheticals to the VE.  In the first of these, the ALJ asked the VE to determine if a hypothetical individual of Plaintiff's age, education, and work experience could perform her past relevant work with the following limitations:

> Assume person who cannot perform more than light work as that term
> is defined in the Social Security regulations and in the Dictionary of

8

Occupational Titles.  And . . . the person should not have to climb ladders or crawl; can occasionally only climb stairs, stoop, and crouch.  The person should not have to reach above shoulder level, and there should be no more than occasional reaching in other directions with the left arm.  That's the non-dominant arm.  The person should not have to use right foot or leg controls.  There should be no concentrated exposure to fumes, dust, or gases; no exposure to hazards; no exposure to vibration.  There should be no exposure to extremes of temperature or humidity.

(R. at 46.)  The VE testified that the hypothetical individual could not perform Plaintiff's past work.  (Id.)  However, according to the VE, the hypothetical individual could perform a variety of jobs at the light and sedentary exertional levels.  In the light, unskilled category, the hypothetical individual could perform the following: general office clerk, with 8,000 jobs regionally; inspector, with 7,000 jobs regionally; and information clerk, with 1,800 jobs regionally.  Likewise, the individual could perform the following jobs at the sedentary exertional level: surveillance system monitor, with 2,000 jobs regionally; general office clerk, with 5,000 jobs regionally; and order checker, with 4,000 jobs regionally.[2]  (R. at 47.)

The VE clarified that all of the positions were simple, routine, and would not involve more than minimal changes in the work setting.  (R. at 47.)  Further, the VE noted that all of the sedentary positions would allow a sit-stand at will option, as well as a reduced number of office clerk and inspector positions.  (R. at 47.)

---

[2] The VE explained that the region consisted of the lower peninsula of the state of Michigan.

The VE testified that missing more than one day per month or eight days in a twelve-month period would be work preclusive, as would the need for unexpected breaks other than two fifteen minute breaks and a half-hour lunch period per day. (R. at 48.)  Finally, the VE testified that being off task for more than twenty percent of the day would preclude competitive employment.  (R. at 49.)

### D.  THE ADMINISTRATIVE DECISION

On May 28, 2013, the ALJ issued her decision.  (R. at 17-27.)  At Step 1 of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since April 23, 2008.  (R. at 19.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the  review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease, chronic obstructive pulmonary disease, and depression.  (R. at 19.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically, Listings 1.02, 3.02, and 12.04.  (R. at 19-20.)

Between Steps 3 and 4 of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the capacity to perform light work with the following limitations:

> [N]o climbing of ladders; occasional climbing of stairs, crouching, and stooping; no crawling; no reaching above shoulder level, and no more than occasional reaching in other directions with the left (non-dominant) arm; no exposure to hazards or vibration; no use of right food or leg controls; no concentrated exposure to fumes, dusts, or gases; and no exposure to extremes of temperature or humidity.  She can perform simple, routine work with minimal changes in the work setting.

(R. at 21.)

Relying on the VE's testimony, the ALJ determined at Step 4 that Plaintiff was unable to perform her past relevant work.  (R. at 26.)

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

At Step 5, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. (R. at 26.) She therefore concluded that Plaintiff was not disabled under the Social Security Act.

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

Plaintiff asserts that the ALJ erred by improperly discounting her credibility (DE 10 at 6-11, 14), which in turn led to a cascade of errors, namely an improper RFC and consequently an inaccurate hypothetical to the VE (Id. at 6, 9, 11.)  Her RFC argument is mentioned only in a topic heading without further

13

development. (Id. at 6) In addition, she briefly mentions the treating source rule, but does not explain how the ALJ erred in this regard.

The Commissioner opposes the motion and asserts that the ALJ's opinion is supported by substantial evidence. She also interprets Plaintiff's first argument as a challenge to the RFC, rather than a challenge to the hypothetical posed to the VE, and argues that the RFC assessed is supported by substantial evidence and the ALJ properly discounted her credibility. Finally, Defendant argues that Plaintiff waived her argument with respect to the treating source rule by failing to develop it beyond citing the law.

Plaintiff has been put in an unfortunate situation by her former counsel, who, among other significant shortcomings in his briefing, thrice refers to her by the wrong name, presumably that of another client. (DE 10 at 10.) As noted above, due to myriad issues, her counsel of record and his law firm were removed from this case (and all Social Security appeals in the Eastern District of Michigan). Plaintiff did not take the opportunity to retain new counsel and chose not to re-file or supplement the current briefing, despite this Court's invitation to do so. (DE 17.) However, in an abundance of caution, I will not restrict my review to the arguments presented in Plaintiff's brief, but will consider the entire record to ensure that substantial evidence supports the ALJ's decision. *See Brinkley v. Comm'r of Soc. Sec.*, No. 14-13560, 2015 WL 1637598, at *2-3 (E.D. Mich. Apr.

14

13, 2015) (where Plaintiff is *pro se*, the Court may "review[] the administrative record for obvious errors in order to affirm the Commissioner's conclusions . . . ." (internal citations and quotations omitted)).

### 1. The RFC is Supported By Substantial Evidence in Light of the Proper Weighing of Plaintiff's Credibility

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also

explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7.

Here, Plaintiff takes issue with the RFC assessment solely because it was inconsistent with Plaintiff's testimony, which she alleges the ALJ to have improperly deemed less than credible.[4]  Plaintiff argues that objective medical evidence supports her testimony.  As support for this position, she points to:

- An April 23, 2008 CT scan that revealed "mild multi-level degenerative disc disease . . . with anterior spondylosis and probable old avulsion fracture of a left anterolateral osteophyte . . ." (R. at 189);

- A report indicating that, immediately following her 2008 car accident she had an "obvious deformity of the anterior thigh" (R. at 200);

- Plaintiff's complaint of low back pain on April 3, 2012 (R. at 222);

- A December 20, 2008 MRI revealing minimal degenerative changes (R. at 258);

- An April 23, 2008 x-ray indicating a displaced fracture of the left clavicle (R. at 196); and

-  A report of her tearful state and depressed affect (R. at 198).

According to Plaintiff, these records lend credibility to her reports of pain, her inability to lift more than then pounds, and her need to take a forty minute break following thirty minutes of housework.  She further argues that these symptoms indicate that she would miss more than one day per month and would need a work-

---

[4] Defendant is correct in observing that Plaintiff failed to develop her RFC argument any further.  (DE 13 at 24.)

preclusive number of breaks.  I conclude that the ALJ's RFC assessment is supported by substantial evidence and the ALJ did not err by discounting Plaintiff's credibility.

The ALJ's "assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 469, 475 (6th Cir. 2007).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ pointed out multiple contradictions in the medical reports and Plaintiff's testimony that tend to undermine her credibility.  For example, although Plaintiff testified at the hearing that she could lift only eight to ten pounds, she reported on April 29, 2012 that she could lift twenty pounds.  (R. at 25 and 155.)  In addition, her treating physician Dr. Sadowski limited her to a thirty pound lifting maximum (R. at 319) and the results of a May 12, 2010 functional capacity evaluation revealed that she could safely lift forty pounds from floor to waist and twenty pounds from waist to shoulder (R. at 23 and 371-72).  In fact, the record

17

evidence reveals multiple instances of normal test results and recommendations
that Plaintiff pursue regular exercise that call into question her complaints of
disabling pain.  (*See, e.g.,* R. at 315, 317, 319, and 320-21.)

Further, the April 23, 2008 x-ray and CT scan to which Plaintiff cites were
taken immediately following her car accident, so it is unsurprising that she
sustained thigh and shoulder injuries at that point.  The ALJ acknowledges as
much in her opinion, specifically stating that Plaintiff "was involved in an
automobile accident on April 23, 2008, and was treated for right thigh pain and left
shoulder pain.  X-rays revealed a mid-shaft displaced femur fracture and a
displaced left clavicular fracture . . . ."  (R. at 22.)  Plaintiff does not indicate how
this 2008 evidence is somehow more persuasive than the years of evidence
following Plaintiff's car accident that demonstrates her progressive improvement.
(*See, e.g.,* R. at 241, 252, 259.)

Moreover, some of the evidence to which Plaintiff's cites in support of her
position tends to weigh *against* her complaints of disabling pain and depression.
For example, the record summarizing the April 3, 2012 appointment at which
Plaintiff complained of low back pain also contains notations that her motor
strength was five out of five.  (R. at 222.)   The December 20, 2008 MRI findings
also paint a different picture than the one summarized by Plaintiff.  Although there
were "minimal degenerative changes," the lumbar spine was described as

"unremarkable," with vertebral alignment within normal limits, no spondylolysis or spondylolisthesis, well preserved disc spaces, and no significant central or neural foraminal stenosis or focal disc protrusion. (R. at 22 and 258.)

In addition, Plaintiff's treating physician Dr. Stoker recommended that she exercise daily and pursue a gym membership. (R. at 314 and 342.) Likewise, Dr. Sadowski also recommended that Plaintiff engage in regular exercise. (R. at 315.) This seems to demonstrate that Plaintiff's physicians found her physical problems to be less problematic than the symptoms to which she testified.

The ALJ also properly discounted Plaintiff's statements related to the disabling impact of her depression. She summarized Plaintiff's infrequent mental health treatment, missed appointments, and ability to attend to her personal needs, read, cook, clean, handle her finances, and communicate with the phone and computer on a daily basis, and concluded that Plaintiff's depression would not preclude her from simple, routine work with minimal changes in the work setting. (R. at 25-26.) This is consistent with the record evidence, which reveals that Plaintiff's mental status examinations were generally normally, other than an indication of depressed mood. (R. at 223, 229, 234, 309, 342, and 351.) Nothing in the record supports further limitations than those assessed by the ALJ. Accordingly, the ALJ did not err either in her credibility assessment, or in the RFC assigned and both are supported by substantial evidence.

19

### 2.    The ALJ Propounded a Proper Hypothetical to the VE at Step 5

When, as here, an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work, the burden shifts to the Commissioner to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

Such substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.*  "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

Here, the ALJ concluded that Plaintiff could not perform her past relevant work because she was limited to a light RFC, and her past work was performed at the heavy exertional level.  She relied on the VE's testimony that there were sufficient jobs available in the regional economy at the light exertional level that

could be performed by an individual with Plaintiff's limitations. Plaintiff argues that, because the ALJ improperly discounted Plaintiff's credibility, her hypothetical to the VE relied upon an inaccurate RFC that did not reflect Plaintiff's impairments. However, as addressed above, the ALJ's decision to discount Plaintiff's credibility and the resulting RFC were well-supported by the record. Accordingly, it was not in error for the ALJ to rely on the VE's response to a hypothetical question that incorporated the RFC finding.

### 3. The ALJ Appropriately Weighed Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR § 404.1527(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants. Id.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a

detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

 If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544 (discussing 20 C.F.R. § 404.1527). Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010)

22

(internal quotation omitted). The United States Court of Appeals for the Sixth

Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir.1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.

In her brief, Plaintiff merely mentions the treating physician rule, but does

not specify how the ALJ purportedly erred in this matter, or even provide the name

of a treating physician whose opinion she contends was improperly weighed. In

most cases, I would conclude that Plaintiff had waived the issue, but given the

special circumstances in this case, I will address the ALJ's treatment of the opinion

evidence.

The only opinion evidence in the record to which the ALJ cites is Dr.

Sadowski's opinion concerning Plaintiff's physical limitations. Specifically, Dr.

Sadowski opined that Plaintiff had a thirty-pound lifting restriction (R. at 319) and

was encouraged to exercise (R. at 315). The ALJ assigned "significant weight" to

his opinion, noting that he treated Plaintiff from 2008 through 2012 and performed

clinical examinations. Dr. Sadowski's opinion is consistent with the ALJ's

assessment of a light RFC.[5]  Accordingly, as the ALJ seemingly afforded *de facto* controlling weight to the opinion of Plaintiff's treating physician and his opinion is consistent with the RFC assessed, I find nothing in the record to indicate that the ALJ erred in her weighing of the opinion evidence, nor does Plaintiff point to any such error, notwithstanding her stock tutorial on the law of the treating physician's rule.  (DE 10 at 12-14.)  Quite frankly, given the ALJ's clear *reliance upon* Dr. Sadowski throughout her decision, this appears to be nothing more than a "canned" or template argument with no relation to the actual facts of this case.

### 4.    The ALJ's Decision is Supported by Substantial Evidence

A review of the record as a whole demonstrates that the ALJ's conclusion is supported by substantial evidence.  Although Plaintiff suffered severe injuries following her April 23, 2008 car accident, the record after April 2008 is replete

---

[5] Pursuant to the regulations, "light work" involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

with examples of normal MRI and x-rays. (*See, e.g.*, R. at 258, 274, and 313.) Her physician anticipated she would return to work by August 2008 (R. at 250) and she was cleared for work by Dr. Sadowski in December of that year. (R. at 332.) She showed and reported dramatic improvements in upper extremity range of motion the following year. (R. at 253, 255.)

In addition, Plaintiff's treating physicians recommended that she exercise daily and noted her continued improvement with physical therapy, which cuts against her complaints of disabling pain. Consistent with this, Plaintiff's functional capacity evaluation demonstrated that she could safely lift 40 pounds from floor to waist, could lift 20 pounds from waist to shoulder, and could safely carry 35 pounds. (R. at 371-72.) Her quad, hamstring, deltoid, and rotator cuff strength was measured at 5/5 in 2008. (R. at 335.) In 2011, her deltoid, bicep, and tricep strength was measured at 4/5. (R. at 316.) Thus, it cannot "be said that the evidence supporting the ALJ's finding that Plaintiff is not disabled is non-existent." *See Salmo v. Comm'r of Soc. Sec.*, No. 11-14926, 2012 WL 6929176, at *4 (E.D. Mich. Nov. 27, 2012) *report and recommendation adopted*, No. 11-14926, 2013 WL 273205 (E.D. Mich. Jan. 24, 2013) (internal quotations omitted).

Contrary to Plaintiff's argument here, the ALJ's RFC does take her subjective complaints into account in the RFC assessment, by limiting her to no reaching above shoulder level and no more than occasional reaching with her left

25

arm, which was injured in the accident. Likewise, she limited Plaintiff to no use of right foot or leg controls due to her previous injury. In addition, the ALJ limits Plaintiff to simple, routine work with minimal changes in the work setting, to account for her complaints of depression. To the extent Plaintiff's complaints of pain were supported by the record, the ALJ took those complaints into consideration and incorporated them into the RFC. She then appropriately relied on the VE's response to her hypothetical questions to conclude that jobs existed in significant numbers in the regional economy for an individual with Plaintiff's limitations, and appropriately concluded that she was not disabled under the Social Security Act. I see nothing in Plaintiff's briefing or in the record as a whole that should disturb that finding, and the ALJ's opinion is clearly supported by substantial evidence.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

27

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: February 5, 2016        s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE


I hereby certify that the foregoing document was sent to parties of record on
February 5, 2016, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager for the
                               Honorable Anthony P. Patti